813 So.2d 441 (2001)
Morris EMERY and Emma Sylvester-Emery; Clifford Wayne Bendily and Mary Agnes Bendily; John Carl Meyers and Alvie Eloise Meyers; Joe O'Connor and Ollie Ruth O'Connor; and Leonise Rodrique Villnerve
v.
OWENS-CORPORATION; Pittsburgh Corning Corporation; Garlock, Inc.; Crown Cork and Seal Company, Inc.; Rock Wool Manufacturing Company; M.H. Detrick Company; Exxon Corporation, et al.
No. 2000 CA 2144.
Court of Appeal of Louisiana, First Circuit.
November 9, 2001.
Rehearing Denied January 28, 2002.
Writ Denied May 10, 2002.
*445 Brent M. Rosenthal, Misty A. Farris, Dallas, TX, Counsel for Plaintiffs/Appellees Clifford Wayne Bendily and Mary Agnes Bendily.
Lawrence G. Gettys, J.J. McKernan, Gary A. Bezet, Baton Rouge, Counsel for Defendant/Appellant Exxon Mobil Corporation.
Before: KUHN, DOWNING and CIACCIO[1], JJ.
KUHN, J.
Defendant-appellant, Exxon Mobil Corporation (Exxon), appeals the trial court's judgment, awarding to plaintiffs-appellees, Clifford "Wayne" Bendily and his wife, *446 Mary, damages they sustained from an asbestos-related injury. We conclude the trial judge erred by allowing the jury to express a determination of the percentage of fault of each joint tortfeasor. Because we conclude on appeal that four tortfeasors are liable for the Bendilys' damages, we affirm the amount of the judgment that reduces the total damages for which Exxon is liable to plaintiffs to 25 percent, i.e., Exxon's virile portion under pre-comparative fault principles. We modify the judgment, however, to delete as surplusage statements referring to the jury's comparative fault determinations.

I. PROCEDURAL AND FACTUAL BACKGROUND
On February 2, 1996, Wayne and Mary Bendily, among others, filed this lawsuit naming numerous defendants. Along with several others, Exxon was sued as a premises owner based on allegations that Wayne Bendily was exposed to asbestoscontaining materials while intermittently working as an insulator at the Baton Rouge refinery from approximately 1965-1970, during his employment with defendant Anco Insulations Inc. (Anco) whom, plaintiffs averred, was an invitee of the refinery. Broadly-stated, plaintiffs alleged that all the defendant corporations had engaged in the mining, processing, manufacturing, sale, distribution, and/or installation, removal or maintenance of asbestos and asbestos-containing materials, and/or machinery requiring asbestos or asbestos-containing materials.[2] The named defendants included Pittsburgh Corning Corporation, Owens-Corning Fiberglas Corporation (Owens-Corning) and FlintKote Company as manufacturers of asbestos-containing products; as well as corporate sellers of asbestos-containing products, like Anco who, relevantly to this appeal, was also sued in its capacity as an employer of Wayne Bendily. Individuals who were respective executive officers of the named corporate employers were likewise named as defendants in this lawsuit.[3]
Because all the other plaintiffs had amicably resolved their claims with all the other defendants, the matter proceeded to a trial on the merits solely for the Bendilys' claims against premises owner, Exxon, and the Anco defendants. After five days of testimony and presentation of documentary evidence, a jury rendered a verdict concluding that Wayne Bendily had sustained an asbestos-related injury for which Exxon, Pittsburgh Corning Corporation, Johns-Mansville, Owens-Corning, Riley Stoker, FlintKote Company, and Combustion Engineering were liable. Having been requested, the jury expressed the degree of fault for which it determined each defendant, Wayne Bendily and various manufacturers of asbestos-containing products as well as several other-premises owners were responsible. The total damages awarded by the jury to Wayne Bendily were $780,000. Mary Bendily was awarded loss of consortium damages in the total amount of $75,000. On October 1, 1998, the trial court signed a judgment awarding $195,000 in favor of Wayne Bendily and $18,750 in favor of Mary Bendily against Exxon, reflecting a reduction *447 of fault to 25% as determined by the jury. The judgment expressly dismissed the Bendilys' claims against the Anco defendants. Exxon appeals. And the Bendilys have answered the appeal.

II. EXXON'S LIABILITY
The jury concluded that Exxon, along with six non-defendant asbestos manufacturers, were liable to plaintiffs for their asbestos-containing products, which were unreasonably dangerous due to a failure to warn. In this appeal, Exxon's only liability challenges are to the trial court's determinations on its statutory employer defense and two evidentiary rulings.

A. Statutory Employer Defense
Exxon urges the trial court erred in failing to instruct the jury on the statutory employer defense. The gist of Exxon's contention is that had the jury been apprised, it would have concluded that Exxon was Wayne Bendily's statutory employer. Therefore, Exxon asserts, the insulator's claim for damages was limited to recovery under the Louisiana Workers' Compensation Act.[4]
The parties do not dispute that Wayne Bendily worked intermittently at Exxon's Baton Rouge refinery during the time frame of 1965-1970. Exxon asserted at trial, and again on appeal, that it is entitled to tort immunity as Wayne Bendily's statutory employer pursuant to the version of La. R.S. 23:1061 in effect when he was exposed to asbestos at the oil refinery and, more precisely, the supreme court's jurisprudential interpretation of that statute as expressed in Thibodaux v. Sun Oil Company, 218 La. 453, 49 So.2d 852 (1950)(enunciating the liberal "integral relationship" standard of the scope of the statutory employment relationship).
In Lemaire v. CIBA-GEIGY Corp., 99-1809 (La.App. 1st Cir. 6/22/2001), 793 So.2d 336, 346, another panel of this court concluded the determination of whether an accident is work-related, in the context of statutory employer status, is a question of law for the court to decide. In so discerning, the Lemaire court noted the issue directly involves the workers' compensation statutes, namely La. R.S. 23:1061, and further that pursuant to La. C.C.P. art. 1732, no jury trial is available in such cases. Id. Applying Lemaire holding, we find the trial judge did not err in his decision not to instruct the jury on the statutory defense.
To the extent that, on appeal, Exxon is contending the trial court erred in concluding Exxon is not the statutory employer of Wayne Bendily, we find no merit in such an assertion. Most notably, Exxon does not assert it was denied a vested property right without due process of law by the trial court's determination. See and compare Cole v. Celotex, 599 So.2d 1058, 1063-64 (La.1992).
At the time Wayne Bendily worked at the Exxon refinery and inhaled asbestos fibers in the insulation he installed and removed from the oil producer's premises, it was the supreme court (in Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852), and not the legislature, which granted tort immunity to a principal. See Kirkland v. Riverwood Int'l USA, Inc., 95-1830, pp. 5-6 (La.9/13/96), 681 So.2d 329, 332. Indeed, until a legislative amendment in 1976,[5] neither La. R.S. 23:1032 nor Section 1061[6] *448 granted tort immunity to a principal. Id. And it was the 1976 legislative amendment to Section 1032 which codified the "integral relationship" test of Thibodaux. See Kirkland, 95-1830 at pp. 9-10, 681 So.2d at 334.[7]
Bendily's injury-producing exposure to asbestos at Exxon's Baton Rouge refinery occurred between 1965 and 1970, which was prior to the 1976 legislative enactment codifying the "integral relationship" test of Thibodaux. Accordingly, under the facts of this case and the application of the plain language of those versions of La. R.S. 23:1032 and Section 1061 in effect at that time of Wayne Bendily's exposure to asbestos we find no error in the trial court's conclusion that Exxon was not his statutory employer and, therefore, is not entitled to tort immunity.

B. Evidentiary Rulings

1. Admission of Hearsay Evidence of Others Who Died of Mesothelioma
Generally, the trial court is granted broad discretion on its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, p. 11 (La.App. 1st Cir.3/11/94), 634 So.2d 466, 476-77, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094.
Suggesting that the evidence was both hearsay and irrelevant, and without identifying which witnesses so testified, Exxon asserts the trial court erred in permitting testimony of the death from mesothelioma (a form of cancer) of former Anco executive officer, Don Gideon.[8] Exxon *449 complains as well of the admission of testimony of former Anco-employee, Lance Radley, that his father likewise died from mesothelioma. Our review of Radley's testimony discloses that his father was an insulator, who actually supervised both Bendily and Radley at the Exxon refinery at times between 1965 and 1967.
On appeal, this court must consider whether the complained-of ruling was erroneous and whether the error prejudiced the defendant. If not, a reversal is not warranted. La. C.E. art. 103; See Brown v. Associated Ins. Consultants, 95-1451, p. 8 (La.App. 1st Cir.4/4/96), 672 So.2d 324, 329, writ denied, 96-1106 (La.6/7/96), 674 So.2d 970. The determination is whether the error, when compared to the record in its totality, has a substantial effect on the outcome of the case. And it is defendant's burden to so prove. Id.
There is ample evidence to support the jury's conclusion that Wayne Bendily suffered an asbestos-related injury. Specifically, a 1937, Exxon-published report concluding a causal relationship existed between the exposure to asbestos-containing dust of insulation workers and asbestosis; uncontroverted testimony of Exxon and Anco employees that the conclusions of the 1937, Exxon-published report were not disclosed to all of management or to workers; and a diagnosis that Wayne Bendily suffers from asbestosis by Dr. Glenn Gomes were among the testimonial and documentary evidence presented to the jury, which support the verdict. The trial court's admission of brief references by the unidentified witnesses and Lance Radley mentioning others who died from mesothelioma is insufficient to warrant interdiction of the jury's verdict.
We believe the thrust of Exxon's appellate complaint is that the "rank hearsay" testimony of the unidentified witnesses and Radley was thereafter used in closing argument by plaintiffs to insinuate to the jury "these two non-party, nonwitnesses had both contracted mesothelioma and, more importantly, since they had both worked at Exxon, [the Bendilys' claims were] more likely true." But Exxon failed to object to the use of the hearsay testimony while counsel for plaintiffs presented their closing argument. And its failure to do so constitutes a waiver of the right to complain regarding the argument on appeal. Cooper v. United S. Assurance Co., 97-0250, p. 18 (La.App. 1st Cir.9/9/98), 718 So.2d 1029, 1038; see also Caballero v. Catholic Mut. Ins. Co., 97-1458, p. 4 (La. App. 1st Cir.6/29/98), 718 So.2d 511, 514, writ denied, 98-2498 (La.11/25/98), 729 So.2d 567 (noting that the propriety of an argument in a civil jury trial must be determined in light of the facts of the particular matter, the conduct and atmosphere of that particular trial, and the arguments of opposing counsel).

2. Exclusion of Prior Trial Testimony of Dr. James Hammond
In its final challenge of the jury's liability determination, Exxon maintains the trial court committed reversible error in failing to admit the prior trial testimony *450 of Dr. James Hammond. In written reasons for judgment rendered pursuant to plaintiffs' pre-trial motion to strike, the trial court concluded that although Dr. Hammond was an unavailable witness under La. C.E. art. 804, his prior trial testimony was nevertheless inadmissible under subsection B(1).
Louisiana Code of Evidence article 804 B provides:
Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given in another proceeding by an expert witness in the form of opinions or inferences, however, is not admissible under this exception. (Emphasis added.)
Based on assertions in its appellate brief, Exxon seems to allude that Dr. Hammond's testimony revealed facts otherwise unavailable to the jury, and that it was therefore admissible under La. C.E. art. 804 B(1). But the factual testimony Exxon asserts Dr. Hammond would have provided actually was presented to the jury by Exxon witness Dr. Neill Weaver. Based on Exxon's appellate contentions, we find no error in the trial court's exclusion of Dr. Hammond's prior trial testimony.
For these reasons, the jury's conclusion that Exxon is liable to the Bendilys for the asbestos-related condition from which Wayne suffers is duly supported by the record. We turn now to the jury's determinations that others were also negligent in causing the damages the Bendilys have sustained.

III. LIABILITY OF OTHER ENTITIES
Exxon initially urges the trial court erred in applying the present law on comparative fault to this cause of action in quantifying the percentage of the Bendilys' damages for which it is responsible. Exxon also maintains the jury erred in failing to determine six additional manufacturers of asbestos-containing products as well as four other-premises owners were also liable for the Bendilys' damages. And the Bendilys' answer to this appeal complains of the jury's assignments of negligence on the part of others, contending that the evidence was insufficient to find three of the six manufacturers held liable were, in fact, negligent. We examine each contention after reviewing the verdict form with which the jury was presented.

A. The Verdict Form
The verdict form presented to the jury first asked whether it found by a preponderance of the evidence that Wayne Bendily had sustained an asbestos-related injury. The jury indicated "YES."
The jury was next requested to find whether any of the named defendants' negligence, if any, was a substantial contributing factor to Wayne Bendily's asbestos-related injury. According to the jury, "YES," Exxon's negligence was. But none of the Anco defendants' negligence, if any, was found to be a substantial contributing factor to that injury.
In a series of three questions, 33 manufacturers were listed. The first question asked the jury to find whether any of the 33 manufacturers were negligent. The jury checked "YES" as to Pittsburgh Corning Corporation, Johns-Mansville, Owens-Corning, Riley Stoker, FlintKote Company and Combustion Engineering. *451 And it checked "NO" for all the remaining manufacturers listed. In response to the next question which elicited whether the jury found any of the asbestos-containing products of the 33 manufacturing entities listed in the previous question were unreasonably dangerous by design, the jury uniformly indicated "NO." But in the subsequent question, and in conformity with its earlier response, the jury checked "YES" next to Pittsburgh Corning Corporation, Johns-Mansville, Owens-Corning, Riley Stoker, FlintKote Company and Combustion Engineering indicating "that the following entities', [sic] asbestos containing products were unreasonably dangerous due to a failure to warn and that the failure to warn, if any, was a substantial contributing factor to [Wayne Bendily's] asbestos-related injury." Insofar as the other 27 manufacturers listed, the jury indicated "NO," their asbestos-containing products were not unreasonably dangerous due to a failure to warn, which failure was a substantial contributing factor to the Bendilys' damages.
The verdict form next elicited of the jury its finding on whether eleven other premises owners were liable for their respective negligence, if any. And the jury uniformly found no negligence-causing damages to the Bendilys by any of the listed, other-premises owners.
The jury was subsequently requested to find whether Wayne Bendily "was negligent, and if so, was his negligence a substantial contributing factor to his asbestos-related injury." It checked "NO."
In the final question on the verdict form presented to this jury, it was asked to "enter the degree of fault expressed as a percentage of each person listed." The question listed: the "Defendants" who had participated in the trial; "Suppliers and/or Manufacturers" which replicated the list of the 33 entities set forth in the earlier questions; "Other Premises Defendants" reiterating the eleven entities listed in the earlier, other-premises owners inquiry; and "Plaintiff" indicating Wayne Bendily. It specifically found that 25% of the fault belonged to Exxon; 50% was apportioned to Pittsburgh Corning Corporation; and the other manufacturers, i.e., Johns-Mansville, Owens-Corning, Riley Stoker, Flint-Kote Company, and Combustion Engineering were each found 5% at fault. The jury expressly indicated that Wayne Bendily was "0%" at fault in causing his damages.

B. Comparative Fault vs. Virile Share
As noted above, the trial judge permitted the jury to determine the percentage of fault each of the entities it found negligent had caused. Exxon urges that in so permitting, the trial court erred as a matter of law.
The parties do not dispute that Wayne Bendily's exposure to asbestos-containing products occurred prior to the enactment of Louisiana Comparative Fault Law.[9] In Cole v. Celotex Corp., 599 So.2d 1058, 1062 (La.1992), the Louisiana Supreme Court determined where the substantial injury-producing exposures giving rise to plaintiffs' claims occurred before effective date of the Louisiana Comparative Fault Law, the case is governed by prior law, and virile share principles apply. At oral argument, the Bendilys correctly acknowledged the applicability of the holding of Cole to the facts of this case. Accordingly, we find the trial court erred in eliciting from the jury the percentage of fault it found each liable entity had caused to the Bendilys. Pre-comparative fault virile share principles apply. See Cole, 599 So.2d at 1072-74; see also Harvey v. Travelers Ins. Co., 163 So.2d 915, 918-19 (La.App. 3d *452 Cir.1964)(applying former Article 2103 of the Louisiana Civil Code, as amended by Act 30 of 1960, to determine the virile share of joint tortfeasors). We turn now to a calculus of the total number of tortfeasors so as to determine Exxon's virile share.

C. Propriety of Jury's Concurrent Causation Findings
The jury concluded that along with Exxon, Pittsburgh Corning Corporation, Johns-Mansville, Owens-Corning, Riley Stoker, FlintKote Company, and Combustion Engineering also negligently caused the Bendilys' damages. The parties dispute the evidentiary bases for the jury's ultimate concurrent causation conclusion.
When evaluating liability in an asbestos claim, traditional theories of tort liability (for example, negligence and products liability) apply, which require proof of causation. Quick v. Murphy Oil Co., 93-2267, p. 8 (La.App. 4th Cir.1994), 643 So.2d 1291, 1294, writ denied, 94-2583 (La.1/6/95), 648 So.2d 923. Asbestos cases typically involve multiple defendants and courts have analyzed the cases under concurrent causation, a doctrine which "proceeds from the assumption that more than one defendant substantially contributed to the plaintiff's injury." Id.
The first element of proof under either negligence or products liability is causation. Id., 93-2267 at p.8, 643 So.2d at 1295. Whether or not a person caused another's injuries is a question of fact subject to the manifest error rule. See Fidelity and Cas. Co. of New York v. Bowman, 383 So.2d 44, 46 (La.App. 1st Cir.1980). If a jury's factual findings have an evidentiary basis, they must be affirmed on appeal unless manifestly erroneous or clearly wrong. See Stobart v. State through Dep't of Transp. and Dev., 617 So.2d 880, 881-82 (La.1993).
Although it is well settled that under the pre-comparative fault principles, a joint tortfeasor is only liable for its virile portion, the negligence of alleged joint tortfeasors nevertheless remains a viable issue at the trial on the merits. And the tortfeasor who remains a viable defendant at trial is only entitled to a reduction of the damage award if the alleged joint tortfeasors released from liability are actually proven to be joint tortfeasors. Raley v. Carter, 412 So.2d 1045, 1046 (La.1982).
Exxon contends that, based on the evidence admitted at trial, the jury should have concluded additional manufacturing entities, GAF Corporation, Fiberboard, A.P. Green, Foster-Wheeler Corporation, Baldwin Ehret Hill and Babcock & Wilcox, negligently caused the Bendilys damages. Exxon also maintains that other-premises owners, Shell Oil Co., Borden, Inc., Dupont, Inc., and Rubicon Inc., likewise should have been found to have negligently caused Wayne Bendily's asbestos-related injury.
Having concluded any of the manufacturers with whose products Wayne Bendily worked were liable, Exxon broadly reasons the jury should have found all the other manufacturers with whose products the insulator worked likewise substantially caused plaintiffs' damages. But as set forth in Raley, Exxon was required to prove that GAF Corporation, Fiberboard, A.P. Green, Foster-Wheeler Corporation, Baldwin Ehret Hill and Babcock & Wilcox negligently caused the Bendilys' damages. This it did not do.[10] Based on *453 this record, the jury's findings that these additional six manufacturer entities were not liable to the Bendilys are not manifestly erroneous. And Exxon's claim that the jury erred by failing to additionally find other-premises owners, Shell Oil Co., Borden, Inc., Dupont, Inc., and Rubicon, Inc., liable to the Bendilys also fails its burden of proof as expressed in Raley. The record is devoid of any evidence showing that any of these other-premises owners knew of a causal relationship between asbestos exposure and asbestosis and failed to advise Wayne Bendily of that danger. This record establishes a reasonable factual basis to support the jury's finding that these other-premises owners were not liable for the Bendilys' damages and, as such, is not clearly wrong.
In their challenge of the jury's concurrent causation conclusion, the Bendilys suggest that, lacking a reasonable factual basis to support its findings, the jury erred in determining that Riley Stoker, Combustion Engineering, and FlintKote Company negligently caused their damages. The Bendilys assert there is no evidence to support the jury's findings that the boilers manufactured by Riley Stokes and Combustion Engineering, respectively, substantially caused Wayne Bendily's asbestos-related injury.
Exxon relies on the testimony of Dr. Arnold Brody, an expert in asbestos pathology and asbestos-related diseases presented to the jury by plaintiffs to assert a causal connexity between the products of Riley Stoker and Combustion Engineering and Wayne Bendily's asbestos-related injury. Dr. Brody explained to the jury that every time a person is exposed to asbestos, that exposure contributes to any asbestos-related injury from which he is subsequently diagnosed to suffer. But Dr. Brody's testimony alone is insufficient to support a causal connection because all the experts who testified agreed the duration and intensity of the asbestos exposure were the key factors in determining the effect asbestos has on an individual. And this record is devoid of any evidence showing the duration or intensity of Wayne Bendily's exposure to any asbestos-containing boilers produced by any of the boiler manufacturers, specifically Stoker Riley and Combustion Engineering. Mindful of the requisite expressed by the supreme court in Raley, which requires Exxon to prove the liability of released joint tortfeasors, we conclude the jury's findings that the products of Riley Stoker and Combustion Engineering were unreasonably dangerous for failing to warn are manifestly erroneous because there is no evidence showing that any such failure could have been a substantial cause of Wayne Bendily's asbestos-related injury. These findings are reversed.
Lastly, the Bendilys maintain that the jury had no evidence before it to conclude FlintKote Company's asbestos-containing product substantially caused their damages due to a failure to warn. In his interrogatory responses Wayne Bendily admitted that he worked with plastic cement. And based on the verdict interrogatory presented to the jury, it could reasonably infer that the plastic cement contained asbestos. But the record is devoid of any evidence of the duration or intensity of Wayne Bendily's exposure to any asbestos that plastic cement contained. Thus, based on this lack of evidence, we are compelled to conclude that *454 Exxon failed the burden of proof expressed in Raley. Exxon was required to show that FlintKote Company's failure to warn Wayne Bendily of using its plastic cement was a substantial cause of the asbestos-related injury he ultimately sustained; it did not. Accordingly, this finding by the jury, lacking a reasonable factual basis to support it, is clearly wrong and is reversed.
In sum, the concurrent causation findings by the jury determining that the asbestos-containing products of Riley Stoker, Combustion Engineering, and FlintKote Company were unreasonably dangerous due to a failure to warn and that failure was a substantial contributing factor to Wayne Bendily's asbestos-related injury are clearly wrong in light of the evidence contained in this record and are, therefore, reversed. Accordingly, based on our review of the jury's factual findings on the concurrent causes of the Bendilys' damages, Pittsburgh Corning, Owens-Corning, Johns-Mansville, and Exxon are the joint tortfeasors who caused the Bendilys' damages.
Applying the pre-comparative fault law as required by Cole, we find that Exxon's virile share is one-fourth, or twenty-five percent, since there are four joint tortfeasors based on the jury's findings and the evidence contained in this record. Although the trial court erred in permitting the jury to quantify fault, under precomparative fault principles, Exxon is nevertheless responsible for twenty-five percent of the damages properly awarded. Phraseology contained in the judgment referring to the jury's quantification of comparative fault is mere surplusage and is deleted from the judgment, as expressly set forth in our decree below. See La. C.C.P. art. 2164.[11]

IV. DAMAGES

A. Propriety of Fear of Cancer and Future Medical Expenses Awards
Without challenging quantum, Exxon contends the jury's awards to Wayne Bendily for past, present, and future mental anguish, which included fear of cancer, as well as that made for future medical expenses, lack the requisite evidentiary basis. Likewise, Exxon suggests the jury's award to Mary Bendily for her past and future loss of consortium lacks an evidentiary foundation. Exxon also raises contention with the jury's quantum determination in its award to her.

1. Fear of Cancer
The jury awarded Wayne Bendily $200,000 for his past, present and future mental anguish. The parties do not dispute that Wayne Bendily's fear of contracting cancer as a result of his exposure to asbestos was the primary component of this award. Exxon asserts that the trial court erred in failing to instruct the jury to consider whether that item of damages had prescribed.

a. Prescription
In a jury trial, the judge has a duty to charge the jury as to the law applicable in a case and the correlative right and responsibility to require that the jury get only the correct law. It is the judge's responsibility to reduce the possibility of confusing the jury, and he may exercise the right to decide what law is applicable to prevent counsel from arguing law which the trial judge deems inappropriate. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 at p. 35, 634 So.2d at 488. A charge to the jury, even if it correctly *455 states the law, must be based on evidence adduced in the case. And a trial judge is not required to give a charge unless the facts support the giving of the charge. Id.
After a thorough review of the record, we find no error in the trial judge's decision to exclude a jury charge on whether Wayne Bendily's claim for fear of cancer had prescribed. Although Exxon correctly points out that Wayne Bendily started undergoing annual medical screenings through his union commencing in the 1980's, there is no evidence establishing he was aware that his exposure to asbestos placed him at a higher risk for developing cancer. He stated only that his understanding of the purpose of the annual medical screening was to evaluate whether he had developed "an asbestos-related disease." Wayne Bendily acknowledged that in the late 1970's or early 1980's he received literature from his union apprising him for the first time that asbestos could be dangerous. But the record is devoid of any showing he possessed actual knowledge asbestos exposure increased the likelihood that he would develop cancer. Because the jury charges are based on the evidence adduced at trial, and the record lacks such evidence, we find no error in the trial court's ruling excluding an instruction on whether the fear of cancer item of damages had prescribed.

b. Genuineness of Claim
Exxon strenuously urges that his prior deposition testimony shows that any fear Wayne Bendily expressed to the jury about developing cancer was self-serving, perfunctory, and "recently[-]minted" for trial. The premises owner contends Wayne Bendily's trial testimony was implausible on its face.
The jury heard the former insulator first hand. It was read excerpts from his earlier deposition. Wayne Bendily explained to the jury that he felt pressured at the deposition and misled by the questions he was asked. He indicated that he did not understand and was confused. The jury, who was in a position to see the non-verbal expressions and hear the intonations of Wayne Bendily, could have readily concluded that the former insulator was a man not prone to over-expression, especially in matters related to his emotional complexion. The jury could glean from the testimony of the former insulator (as well as that of his wife) that Wayne is not comfortable acknowledging he has fear of any sort.
Whether Wayne Bendily's testimony to the jury was genuine was uniquely a credibility determination, one which the jury concluded in favor of plaintiffs. And this court is precluded from re-visiting the creditability determinations of the trier of fact "unless documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story." Stobart, 617 So.2d at 882.
It is clear to us that a reasonable factual basis exists for the jury to surmise that Wayne Bendily is a man most comfortable understating his fears, instead attempting to silently maintain an appearance of strength, which was shown in his deposition testimony. But we cannot say the jury erred in believing that his testimony at trial, where he expressed his fear of developing cancer, was genuine. We will not revisit this credibility finding by the jury. There is no error.

2. Future Medical Expenses
Exxon claims the jury's award to Wayne Bendily for future medical expenses required a showing that more likely than not Wayne Bendily would die of asbestosis and that the $200,000 award was *456 derived from testimony of Dr. Gomes stating the future costs of Wayne Bendily's death due to both asbestosis and cancer. Because he does not have cancer, Exxon urges the jury could not have awarded the future medical expenses it did.
A plaintiff may ordinarily recover reasonable medical expenses, past and future, which he incurs as a result of an injury. However, a plaintiff must prove the existence of the injuries and a causal connection between those injuries and the tortious conduct. The test is whether plaintiff has shown through medical testimony that more probably than not the subsequent medical treatment was necessitated by the trauma suffered. See White v. Longanecker, 93-1122, p. 9 (La.App. 1st Cir.5/23/94), 637 So.2d 1213, 1218.
Dr. Gomes testified that Wayne Bendily will most likely die from an asbestos-related disease. According to this physician, as a result of the asbestosis from which Wayne Bendily presently suffers, he is likely to develop respiratory problems which will require hospitalization three of four times per year during the last four of five years of his life. Dr. Gomes estimated that the hospitalization costs associated solely with the asbestosis would be between $80,000 and $200,000. Based on this testimony, we find a reasonable factual basis exists to support the jury's award of future medical damages to Wayne Bendily.

B. Loss of Consortium
In their challenge of the propriety of the jury's award for loss of consortium to Mary Bendily, Exxon contends the evidence shows Wayne Bendily's asbestosis has had very little impact on plaintiffs' marriage. And because the jury concluded Wayne Bendily suffered no pain and suffering through the date of trial, Exxon suggests the jury could not have reasonably determined that Mary Bendily was entitled to loss of consortium damages. Exxon also urges that even if the jury's award was supported by an evidentiary basis, the amount of $75,000 was an abuse of discretion.

1. Propriety of Award
An award for "loss of consortium" includes such pecuniary elements as loss of services and such non-pecuniary components as love, companionship, affection, society, sexual relations, comfort, and solace. Daigle v. Legendre, 619 So.2d 836, 842 (La.App. 1st Cir.), writ denied, 625 So.2d 1040 (La.1993).
The jury was asked to state the "past and future loss of consortium damages," if any, to which Mary Bendily was entitled. The interrogatory further stated, "Loss of consortium includes the loss of love, companionship, comfort and family services which a family member might have provided if he had not been injured." This jury interrogatory was not objected to by Exxon.
The record shows that Mary Bendily has already sustained a measurable loss of some of the non-pecuniary components of consortium, in particular the companionship she previously enjoyed with her husband when they engaged in physical activities. Mary testified that while her feelings for her husband had not changed, the activities they undertook together had. She told the jury that she was an active person, especially when outdoors, and she explained that Wayne no longer could keep up with her physically due to his shortness of breath. Mary described how the couple had an on-going project, clearing property they owned. By trial date, Wayne no longer could do the amount of work he had done in the past because of his shortness in breathing. As a result, she physically cleared the land, with her husband watching on the side. Mary also explained how *457 the couple used to walk around a school track, and that Wayne could no longer keep up with her. They do not go to the track anymore.
Mary described to the jury how, as her husband's condition progresses, the imposition on her daily life will grow, especially since she will have to care for both her husband and the household duties by herself. She explained the central role in which Wayne presently engages in their daily lives, indicating how many more duties she will have to assume as his condition worsens.
We find a reasonable factual basis exists to support the jury's award. Dr. Gomes explained that Wayne Bendily's asbestosis was a condition for which there is no cure. In time, he will most certainly develop more acute respiratory problems. Mary's testimony detailed changes she expects in her lifestyle as Wayne's asbestosis progresses, as well as losses she has already felt. It is precisely due to the nature of asbestosis that the jury could have made an award of future loss of consortium to Mary, although it concluded that Wayne had not yet sustained any measurable amount pain and suffering. The jury did not err by awarding Mary Bendily loss of consortium damages.

2. Quantum of Award
The trier of fact is given much discretion in the assessment of damages. Upon appellate review, damage awards will be disturbed only when there has been a clear abuse of that discretion. La. C.C. art. 2324.1; Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). The initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's much discretion. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), (citing Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976)), the court stated: "Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion."
The loss of consortium award of $75,000, which includes not only the losses Mary Bendily has already sustained but also those she is likely to sustain as her husband's incurable condition worsens, was not an abuse of the jury's vast discretion. The incurable nature of Wayne's asbestos-related injury and the evidence that Mary will care for her husband and household by herself when her husband's condition progresses coupled with the actual loss of companionship this physically-active wife has sustained demonstrates the jury carefully fashioned an award for Mary's particular injuries and their effects upon her. As such, it will not be disturbed on appeal.

C. Quantum of Future Pain and Suffering Award
Exxon complains the jury's award for $280,000 to Wayne Bendily for future pain and suffering is an abuse of discretion suggesting that, in light of the amount, the jury must have included the pain and suffering he would undergo if he were to die of mesothelioma.
The record shows that Wayne, an avid hunter, has always been physically active, which was well-supported by the evidence. As the asbestosis progresses, he will develop acute respiratory problems, which will require frequent hospitalizations. Because asbestosis is incurable, the diminution in his ability to engage in physical activity *458 will increase over time, and his stamina will decrease. According to Dr. Gomes, Wayne has developed asbestosis at a very young age. He stated that most patients he has seen with the level of lung scarring that Wayne has are about ten to twenty years older than Wayne. Dr. Gomes described that in the most severe cases of asbestosis, a person's life consists of sitting in an armchair on the ground floor of a building with an oxygen tank, which is disconnected just long enough for the person to use the bathroom.
Based on the evidence in this record, we cannot say the jury did not consider the nature of asbestosis and its effect upon this physically-active man in tailoring its future pain and suffering award to Wayne Bendily. Mindful that an award should only be disturbed upon appellate review when there has been an abuse of the trier of fact's vast discretion, we affirm the jury's quantum determination in the amount of $280,000.
Accordingly, having found neither manifest error nor any abuse of discretion in the awards which Exxon has challenged on appeal, the jury's awards of damages are affirmed.

VI. DECREE[12]
For all these reasons, the trial court's judgment against Exxon is affirmed insofar as it: "is entered in favor of plaintiff [Wayne Bendily] and against Defendant [Exxon] in the sum of $195,000.00..."; and "is entered in favor of [Mary Bendily] and against Defendant [Exxon] in the ... sum ... of $18,750.00...."
We delete from the judgment as mere surplusage the sentence, "The sum of $195,000.00, rendered against [Exxon], reflects a 75% reduction of the jury's verdict based on its comparative findings of liability with regard to [Pittsburgh Corning], Johns-Manville, Owens-Corning, Riley Stoker, [FlintKote Company], and Combustion Engineering." And also deleted from the judgment in the subsequent paragraph as surplusage is the sentence, "The sum of $18,750.00, rendered against [Exxon], reflects a 75% reduction of the jury's verdict based on its comparative findings of liability with regard to [Pittsburgh Corning], Johns-Manville, Owens-Corning, Riley Stoker, [FlintKote Company], and Combustion Engineering." In all other respects the judgment is affirmed.
Costs of this appeal are to defendant-appellant, Exxon Mobil Corporation.
AFFIRMED AS MODIFIED.
NOTES
[1] The Honorable Philip C. Ciaccio, Judge (retired), Fourth Circuit Court of Appeal, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] In their various pleadings amending and supplementing their petition, plaintiffs expressly note that although defendant Metropolitan Life Insurance Company was a corporate entity, it was sued as an insurer and not as an active tortfeasor.
[3] Anco-founder, Reuel Lacy "Sonny" Anderson, Jr., and Harold Johnson were each named as defendants in their respective capacities as executive officers of Anco. Throughout this opinion, references to "Anco" include the Bendilys' claims against Anderson and Johnson in their capacities as executive officers of Anco.
[4] See generally La. R.S. 23:1021-1317.
[5] See La. Acts 1976, No. 147, § 1.
[6] The version of La. R.S. 23:1032 in effect during 1964-1972 provided:

The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations.
Nothing in this Chapter shall affect the liability of the employer to a fine or penalty under any other statute.
And the relevant version of La. R.S. 23:1061, which had remained virtually unchanged since the 1914 adoption of the Workers' Compensation Act, provided:
Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.
[7] Particularly, La. R.S. 23:1032 was amended to read in part:

The rights and remedies herein granted to an employee or his dependent ... shall be exclusive of all other rights and remedies of such employee against his employer, or any principal or any ... employee of such employer or principal.... For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof. (Emphasis added.)
[8] The record in this matter contains nearly 2000 pages of transcribed testimony, set forth in nine volumes, which was elicited over a five-day period. According to Rule 2-12.4 of the Uniform Rules of the Courts of Appeal, the argument on an assignment of error "shall include a suitable reference by volume and page to the place in the record which contains the basis for the alleged error." The failure of appellant to do so permits that the court "may disregard the argument on that error." Although we will not so penalize Exxon in this appeal (because of its suitable references to plaintiff's closing argument), we issue a precautionary warning that the general reference to "witnesses" in its admissibility assertion skirts the outer perimeter of Rule 2-12.4.
[9] See La. Acts 1979, No. 431.
[10] During deliberations, the jury presented the trial judge with a written request seeking the names of companies who manufactured specifically-identified products, which according to Exxon shows the jury wanted to find at least some of those manufacturers liable. The jury was advised the trial judge could not comment on the evidence but that portions of testimony could be read to it. And the jury was polled after it returned its verdict, to which nine of the twelve jurors stated that "yes" that was their verdict. We find this suggestion by Exxon to be pure speculation for which we decline to interdict the verdict.
[11] Louisiana Code of Civil Procedure article 2164 states, in relevant part, "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal."
[12] According to the official court minutes, a hearing on plaintiffs' rule to tax costs was heard on March 5, 1999, wherein the trial court "ordered that costs for enlarging exhibits or expenses for exhibits used at trial ... are to be taxed as court costs." The record does not contain a signed order or judgment setting forth the amount of costs assessed. On appeal Exxon only asserts that the inclusion of enlargement of exhibits as an item of costs is erroneous. Based on the showing made by Exxon, we find no abuse in the trial court's vast discretion to set court costs. See La. C.C.P. art. 1920.