886 So.2d 463 (2004)
Bradley COLE, Individually and on Behalf of His Minor Child, Leah Ashton Cole and Denise Cole
v.
STATE of Louisiana, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS.
No. 2003 CA 2269.
Court of Appeal of Louisiana, First Circuit.
June 25, 2004.
Writ Denied October 29, 2004.
*464 Christopher C. McCall, Robert C. McCall, Lake Charles, Counsel for Plaintiff/Appellee Bradley Cole, individually and on behalf of his minor child, Leah Ashton Cole and Denise Cole.
John G. Morgan, L. Adrienne Dupont, W. Wayne Gaudin, Jr., Baton Rouge, Counsel for Defendant/Appellant State of Louisiana, Department of Public Safety and Corrections.
Before: PETTIGREW, DOWNING and McCLENDON, JJ.
DOWNING, J.
The State of Louisiana, Department of Public Safety and Corrections (DPSC) appeals an adverse quantum judgment resulting from damages suffered by one of its prison guards, Bradley Cole, from an intentional battery inflicted during a training exercise. For the following reasons, we affirm.

PROCEDURAL HISTORY
This court had remanded the matter to the trial court in an unpublished opinion, Cole v. State, Through the Dept. of Public Safety and Corrections, 00-1222 (La.App. 1 Cir. 4/16/03), 844 So.2d 420 (unpublished), writ denied, 03-1330, 03-1349 (La.5/21/03), 845 So.2d 369, for a determination of Cole's damages exclusive of those resulting from a head injury. We did this because the Louisiana Supreme Court had remanded the matter to this court with instructions for this court to re-assess the damage award exclusive of the amount apportioned for a closed-head injury. Cole v. State, Through the Department of Public Safety and Corrections, 01-2123 (La.9/4/02), 825 So.2d 1134.
On remand, the trial court reduced Cole's general damage award by ten percent (10%) to exclude the damages attributable to his alleged head injury. The current judgment awards Cole $607,500.00 in general damages.[1] The trial court did not reduce its awards for future medical expenses, lost wages or damages for loss of consortium.
The DPSC now appeals raising three assignments of error. It alleges that the trial court was manifestly erroneous in reducing the previously rendered judgment by only ten percent (10%) of the general damages award. It alleges that the trial court was manifestly erroneous in allowing testimony about "anything other than the portion of the original judgment that was attributable to a closed head injury." It alleges that the trial court was manifestly erroneous in casting the DPSC with costs since it was the prevailing party.

DISCUSSION

Additional Evidence on Remand
In its second assignment of error, the DPSC argues that the trial court erred in allowing testimony about any damages beyond those attributable to Cole's alleged head injury. We disagree.
In Cole, 00-1222 at p. 2, 844 So.2d 420 (unpublished), we provided the following instruction to the trial court for the taking of additional evidence, as follows:
The trial court is instructed to allow the parties additional expert testimony relevant to the determination of the damages sustained by Cole exclusive of the closed head injury. The trial court, in its discretion, may allow additional testimony from Cole and his wife and additional medical examination of Cole relevant to the determination of damages.
*465 DPSC sought writs to the Louisiana Supreme Court regarding this decree, which were denied in Cole, 03-1330, 03-1349 (La.5/21/03), 845 So.2d 369.
We have carefully reviewed the record, and we conclude that the trial court admitted evidence into the record within the confines of our order. Under the law of the case doctrine, an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Held v. Aubert, 02-1486, p. 17 (La.App. 1 Cir. 5/9/03), 845 So.2d 625, 639. We note, however, that where a prior disposition is clearly erroneous and will create a grave injustice, it should be reconsidered. Held, 02-1486 at p. 17, 845 So.2d at 639-40. Since we conclude that our prior ruling was consistent with the law and not erroneous, we decline to revisit our previous order.
We find no error in the trial court taking evidence to determine the extent of Cole's damages exclusive of the alleged closed-head injury. We note that the DPSC had the same opportunity as Cole to present evidence to support its position and to rebut Cole's, but did not do so. This assignment of error is without merit.

Damages Quantum
In its first assignment of error, the DPSC argues that since the original damage award was premised primarily on a finding of a closed-head injury, the trial court's damage award on remand was excessive for injuries to Cole's back and neck.[2] We disagree.
The only expert to testify at the hearing on remand, Dr. Kevin Gorin, testified that Cole's ultimate damages would be the same whether attributable to a closed-head injury or to Cole's other seven diagnoses.[3] He testified that patients who are depressed because they are in pain, as is Cole, "will display a similar cognitive sequelae to those patients who may have suffered raw brain trauma...." He observed that "the ultimate end point is the same" whether the "physical, behavioral, and cognitive dysfunction" was caused by a closed-head trauma or otherwise. Dr. Gorin testified, "He still presents the exact same way."
Even so, after considering the evidence and reducing damages for the alleged head injury, the trial court's oral reasons show that it "reduce[d] this award substantially by ten per cent. In other words, the $675,0000.00 in general damages [would] be reduced by $67,500.00." The trial court left all other damage awards unchanged.
The trier of fact is given much discretion in the assessment of damages. La. C.C. art. 2324.1. On appellate review, damage awards will be disturbed only when there has been a clear abuse of that discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). The initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's much discretion. Emery v. Owens-Corporation, 00-2144, pp. 21-22 (La.App. 1 Cir. 11/9/01), 813 So.2d 441, 457, writ denied, 02-0635 (La.5/10/02), 815 So.2d 842; Reck v. Stevens, 373 So.2d 498, 501 (La.1979). In Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993) (citing Coco v. Winston Industries, Inc., *466 341 So.2d 332 (La.1976)), the court instructed that, "Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion."
Accordingly, we have reviewed the trial court's award for the particular injuries and their effects upon this particular injured person. Under the circumstances of this case, we conclude the trial court did not abuse its much discretion in setting Cole's damages awards.
The record before us shows that Cole will endure a pain level of six to seven, occasionally down to a five, for the remainder of his life as a result of his injuries exclusive of the alleged head injury. A level five pain is one that cannot be ignored for more than thirty minutes at a time. A level seven pain makes it difficult to concentrate, interfering with sleep. At the beginning of his treatment, Cole's pain was generally at a level of nine.
Cole has endured four surgeries: two neck surgeries including a fusion and two shoulder surgeries. Even so, apart from the chronic, severe pain, he suffers from depression, anxiety and social withdrawal. He suffers from impaired memory, impaired concentration, and impaired tolerance for interpersonal interactions.
Cole has reached maximum medical improvement, and he is unable to engage in gainful employment.
Cole's regimen of medication includes a muscle relaxant, a headache medicine, medicine for the mechanical pain, an anti-depressant, two membrane stabilizing agents for mood control and for treatment of neuropathic left-arm pain, and a medicine for additional control of depression as well as a sleep aid. The prognosis is that he will continue to need these medications. Dr. Gorin testified that none of these medications are specifically attributable to the alleged closed-head injury.
The DPSC fails to make any specific argument regarding any particular damage award. Rather, it argues that a reduction in the general damage award of $67,500.00 to reduce damages awarded for the alleged head injury was inadequate, thus an abuse of the trial court's discretion. Based on the uncontradicted evidence in the record, however, that Cole's damages were substantially the same whether caused by a closed-head injury or by other aspects of the intentional battery on him, the trial court could have decided not to reduce damages at all. Accordingly, we cannot conclude that the trial court abused its discretion in reducing the damages by the significant sum of $67,500.00. Nor can we say under the circumstances of this case that the amount of the damage award is abusively high.
The DPSC's first assignment of error is without merit.

Costs
The DPSC last argues that the trial court erred in assessing it with costs when it was the prevailing party. We are somewhat puzzled by DPSC's claim that it is the prevailing party in that it is being cast in judgment. This matter was remanded to the trial court to determine a correct amount of damages, not for a reconsideration of the merits. La. C.C.P. art. 1920 gives the trial court discretion to tax costs "against any party as it may consider equitable." While we do not have the benefit of the trial court's reasons for taxing costs as it did, we see no special indication that the trial court abused its discretion by taxing costs to the party cast in judgment. This assignment of error is without merit.

*467 DECREE

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed to the State of Louisiana, Department of Public Safety and Correction in the amount of $1,628.17.
AFFIRMED.
McCLENDON, J., affirms in part and dissents in part and assigns reasons.
DOWNING, J., specially concurring.
The supreme court's conclusion that there was no evidence to support the finding of a closed head injury is premised upon the following definitions:
A closed head injury is defined as a head injury in which the scalp and the mucous membranes (of the mouth and nose) remain intact.
Cole v. State, Through the Department of Public Safety and Corrections, 01-2123, pp. 14-15 n. 2 (La.9/4/02), 825 So.2d 1134, 1144 n. 2. Footnote 2 cites, Attorneys' Dictionary of Medicine and Word Finder, J.E. Schmidt, M.D. (2001) as the source of this definition.
A closed head injury is caused by an external blow to the cranium that may or may not be sufficient to fracture the skull. Head injuries are generally classified as either mild, moderate, or severe.
Cole, 01-2123 at p. 15 n. 3, 825 So.2d at 1144 n. 3. Footnote 3 cites, Lawyers' Medical Cyclopedia of Personal Injuries and Allied Specialties, (4th Edition 2001).
Even in mild head injury cases, there is a transient loss of consciousness. In moderate head injuries, the period of unconsciousness may last up to one hour and neurological signs may appear. A patient suffering from a severe brain injury may suffer unconsciousness for several hours. Recovery is slow, and a return to consciousness may take from days to weeks. In cases of extremely severe brain injury, the patient suffers trauma to parts of the brain essential to life and shows severe neurologic abnormalities. Sometimes, in spite of all possible treatment, the patient dies within a few hours.
Cole, 01-2123 at p. 15, 825 So.2d at 1144. There is no reference to the source of this opinion.
The requirement, stated above, of loss of consciousness to incur a head injury is critical because the supreme court states:
Our review of the record reveals that Cole's presentations of history and complaints to the various doctors were internally inconsistent and inconsistent with the medical definition of a serious closed head trauma.
Cole, 2001-2123 at p. 15, 825 So.2d at 1145.
The problem is that the "medical definition of a serious closed head trauma," used by the supreme court, requiring a loss of consciousness, is not in the trial record. An appellate court cannot review evidence that is not in the record. Willis v. Letulle, 597 So.2d 456, 464 (La.App. 1 Cir.1992). "Learned treatises," are admissible "[t]o the extent called to the attention of an expert witness upon cross-examination or, in a civil case, relied upon by him in direct examination," if "established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice." La. C.E. art. 803(18). "An `adjudicative fact' is a fact normally determined by the trier of fact." La. C.E. art. 201(A). A party should be given an opportunity to be heard prior to the taking of judicial notice. La. C.E. art. 201(E).
The two treatises cited by the supreme court were not called to the attention of an expert witness in any manner. It is doubtful that a doctor would consider a general treatise published for attorneys as a reliable authority. Further, the parties were *468 not given an opportunity to be heard prior to or after the taking of judicial notice of these treatises. Finally, this writer sees no difference between an appellate court consulting these treatises or consulting a doctor outside of the record, which is clearly impermissible.
However, "[a]s an intermediate appellate court we are obligated to follow these instructions from the Louisiana Supreme Court." Willis, 597 So.2d at 460.
McCLENDON, J., affirms in part and dissents in part and assigns reasons.
Although a ten percent reduction appears to be low in the context of this case, based on Dr. Gorin's uncontroverted testimony on remand that Mr. Cole's damages were the same, regardless of the underlying cause, I cannot say that the ten percent reduction was an abuse of the trial court's vast discretion. However, I do not believe that the general damage award can be reduced by ten percent without some reduction of the loss of consortium claims and the claims for future medicals.[1] It is not reasonable to conclude that these damages exist in a vacuum separate from the award for general damages. Therefore I believe the trial court erred in failing to reduce the damages for loss of consortium and future medicals. I respectfully dissent from that part of the majority opinion.
NOTES
[1] The prior general damage award was for $675,000.00
[2] The DPSC did not challenge the original damage award in its prior appeal.
[3] Apart from the closed-head injury, Dr. Gorin diagnosed Cole as suffering from multiple trauma, status post-cervical fusion, compensatory myofascial pain syndrome, left cervical radiculopathy, post-traumatic headaches, adjustment disorder with possible post-traumatic stress disorder, and diplopia, left eye.
[1] With respect to future wages, the uncontroverted testimony on remand established that Mr. Cole remains totally disabled, even without the head injury.