# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# NUMBER 2021 CA 1362

## HILDA ROBERTA MAESTRI LANDRY
## AND THE ROBERT S. MAESTRI TRUST

### VERSUS

## THE CITY OF MANDEVILLE AND THE STATE OF LOUISIANA
## DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT

Judgment Rendered: **APR 2 7 2022**

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Docket Number 2003-15772

The Honorable Reginald T. Badeaux, Judge Presiding

*************

| | |
|---|---|
| J. Geoffrey Ormsby<br>Randall A. Smith<br>New Orleans, LA | Counsel for Plaintiffs/Appellees,<br>Hilda Roberta Maestri Landry, the<br>Robert S. Maestri Trust, Hilda Landry<br>Drennan, Hilda Landry Drennan, in her<br>capacity as Successor Trustee of the<br>Roberta Maestri Residence Trust, Hilda<br>Roberta Maestri, in her capacity as<br>Trustee of the Landry Children Trust |
| Edward J. Deano, Jr.<br>Mandeville, LA | Counsel for Defendant/Appellant,<br>The City of Mandeville |
| Christopher M. Moody<br>Albert D. Giraud<br>Hammond, LA | |
| Paul E. Harrison<br>C. deShea Richardson<br>Mandeville, LA | |

*************

BEFORE: WHIPPLE, C.J., MCDONALD, AND LANIER, JJ.

*McDonald, J. dissents, The trial judge exceeded his authority and fashioned an unworkable remedy.*

**WHIPPLE, C.J.**

This matter is before us on appeal by the City of Mandeville from a judgment of the trial court in favor of plaintiffs, Hilda Roberta Maestri Landry, Hilda Roberta Maestri Landry in her capacity as Trustee of the Robert S. Maestri Trust, Hilda Landry Drennan, Hilda Landry Drennan in her capacity as Successor Trustee to the Roberta Maestri Residence Trust, and Hilda Roberta Maestri, in her capacity as Trustee of the Landry Children Trust. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

On December 10, 2003, plaintiffs, who are the owners of twelve and a half acres of immovable property in the City of Mandeville, filed a petition for injunctive relief against the City of Mandeville ("the City") and the State of Louisiana, Department of Transportation and Development ("the DOTD") contending that pursuant to certain drainage projects, the City, with the approval and funding of the DOTD, installed larger-sized drainage pipes, which increased the flow of water draining on to their property and permitted significant amounts of trash and debris to be deposited on their property during periods of high water.[1] Plaintiffs further contended that the Ravine Au Coquilles ("the ravine"), which runs through their property, no longer provided natural drainage through and across their property, but instead was overwhelmed by the additional volume of water, resulting in standing water and rendering areas of their property inaccessible and unusable. In August of 2003, plaintiffs attempted to fill certain areas of their property to combat the flooding problem, which prompted the City to issue a "stop work" order directing plaintiffs to cease and desist from any activities intended to reduce or minimize the effects of the increased water flow onto their property. In response, plaintiffs sought preliminary and mandatory injunctive relief directing the City to remove the existing

---

[1]Plaintiffs' petition was subsequently supplemented and amended three times.

2

culverts on Monroe Street, an order lifting the "stop work" order imposed on plaintiffs, and damages, costs, and attorney's fees.

The City filed an answer and reconventional demand against plaintiffs, seeking injunctive relief directing plaintiffs to remove the fill placed on their property and return the bed and banks of the ravine to their original condition. The DOTD filed an answer and various exceptions. Following a hearing on March 23, 2004, the trial court issued a judgment denying plaintiffs' request for a preliminary injunction against the DOTD and dismissing the DOTD from this litigation.

Thereafter, on August 19, 2004, plaintiffs and the City entered into a Consent Judgment through which they agreed:

> 1) The **City of Mandeville** is to cause the installation [of] a 48" pipe from the western side of Carondelet Street to the Galvez Street outfall according to the **[DOTD]**'s timetable, plans, and specifications;
>
> 2) Within Thirty (30) days of the date of this judgment, the **City of Mandeville** shall install trash racks at the culverts located underneath Monroe Street at the intersection of Wilkinson and Monroe Streets. The trash racks are to be installed on the northern side of Monroe Street where the culverts are installed on the property owned by the **City of Mandeville** located at the northeast corner of Wilkinson and Monroe Streets. The trash racks are to remain at this location and the **City of Mandeville** is to regularly clean and maintain these trash racks;
>
> 3) The **City of Mandeville** is to regularly clean the culverts that exit adjacent to the Plaintiffs' property that are located in the Lafayette Street right of way[;]
>
> 4) Plaintiffs will grade the stream bed located on Plaintiffs' property so that the bed descends at a regular rate from its elevation of approximately plus 1.8 msl at Monroe Street to its elevation of 0.0 msl at Lafayette Street. Further, Plaintiffs are authorized to spread the spoil from the grading of the stream on Plaintiffs' property in any area that does not interfere with the flow of the stream. The parties acknowledge and agree that this does not change or alter the status of the servitude as a natural servitude and that the servitude remains a natural servitude, nor will this in any way diminish Plaintiffs' legal rights;
>
> 5) The parties agree that this Consent Judgment is limited to these matters only and that all parties reserve their rights, without prejudice, to the matters in this litigation. The parties further agree that the parties' respective claims to a preliminary injunction are continued without date.

In May of 2005, plaintiffs filed a first supplemental and amending petition alleging that the City installed certain pipes with incorrect inverts such that they did not allow water to exit plaintiffs' property and, instead, impeded the flow, causing water to back up onto plaintiffs' property and preventing water from properly draining off of plaintiffs' property. Thus, plaintiffs requested that the trial court order the City to remove the existing culverts on Lafayette Street and install them at the correct inverts. The plaintiffs further sought the issuance of a permanent injunction, plus damages, costs, and attorney's fees.

In June of 2018, plaintiffs filed a second supplemental and amending petition for supplemental relief and damages, contending that the City failed to comply with terms of the Consent Judgment, and asserting claims for interference with a natural servitude, negligence, inverse condemnation, and for which plaintiffs sought a mandatory injunction and damages, costs, and attorney's fees.[2]

On August 27, 2020, the City filed a motion in limine, contending that the only issue in this matter is whether the City complied with the Consent Judgment, and requesting that the trial court issue an order barring plaintiffs, plaintiffs' counsel, plaintiffs' expert civil engineer Dr. James Martin, Jr., and/or any other parties or witnesses from attempting to testify and/or introduce at trial any evidence concerning the effect of development in Old Mandeville on purported increase in water flow across plaintiffs' property.[3]

---

[2]The original petition was filed on behalf of Hilda Roberta Maestri Landry, and the Robert S. Maestri Trust, represented by its Trustee, Hilda Roberta Maestri Landry. In July of 2018, plaintiffs filed a third supplemental and amending petition adding as additional plaintiffs: Hilda Landry's daughter, Hilda Landry Drennan, individually; Hilda Landry Drennan, in her capacity as Successor Trustee to the Roberta Maestri Residence Trust; and Hilda Roberta Maestri, in her capacity as the Trustee of the Landry Children Trust.

[3]In 2019, the plaintiffs and the City filed motions for partial summary judgment. Plaintiffs contended they were entitled to judgment in their favor as a matter of law because the City admitted it had increased the flow of water over plaintiffs' property in violation of LSA-C.C. art. 656. The City contended that plaintiffs' claims are barred by the discretionary immunity afforded the City pursuant to LSA-R.S. 9:2798.1, and thus sought judgment in its favor dismissing plaintiffs' claims as a matter of law. Following a hearing, the trial court signed a judgment on January 14, 2020, denying both motions.

4

The matter was heard before the trial court on September 23 and 24, 2020. Before proceeding to the merits, the trial court considered and denied the City's motion in limine. In doing so, the trial court noted:

> To the extent that [Dr. Martin's report] may or may not be relevant, I'm talking about say Dr. Martin's report or analysis prior to this consent judgment, it might be relevant.
>
> But you can rest assured because it's a bench trial, I'll be sure to give it whatever due weight it should be accorded, if any. And I trust opposing Counsel will really be concentrating not so much on that but on what's happened since the consent judgment and the alleged breach of it thereof.
>
> And it might be necessary to compare Dr. Martin's analysis beforehand just as a reference point. But I'd like to reassure you I'm not going to consider any irrelevant evidence.

The trial court then proceeded to hear plaintiffs' claims on the merits, i.e., plaintiffs' claims: for a judgment ordering the City to remove and reinstall the existing culverts on Lafayette Street at the correct inverts; for a preliminary injunction directing the City to reroute the drainage from plaintiffs' property and restore the property to its natural condition; for a permanent and mandatory injunction compelling performance of these acts; for enforcement of the Consent Judgment; for a judgment on interference with a natural servitude; negligence; inverse condemnation; damages; costs; and attorney's fees.

At the conclusion of trial, the trial court ordered the parties to file post-trial briefs and took the matter under advisement. On April 9, 2021, the trial court rendered a judgment, accompanied by written reasons for judgment.[4] The judgment of the trial court ordered the City to undertake specific efforts to fix the drainage problems, to reimburse plaintiffs for costs expended, and to pay court reporter fees, as follows:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**
the City of Mandeville to undertake a fix, with Dr. Martin participating

---

[4]There is no indication in the record that the trial court considered or disposed of the claims asserted by the City in its reconventional demand. Nonetheless, the judgment before us contains the required certification to be immediately appealable pursuant to LSA-C.C.P. art. 1915(B).

in the design of the fix, at the City's cost, to dig out some of the cross section on the ravine on the plaintiffs' property, place backfill, put the pipes in the ground, backfill them and seed over it, then fill the property to cover it in order to alleviate the drainage problems that have worsened over the years on the property.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED** the City of Mandeville is to reimburse the plaintiffs for any costs they expended during the course of this trial.

**IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED** the City of Mandeville and Albert D. Giraud, Esq., *in solido*, to pay Belen B. Cross, CCR, the court reporter in this trial, in the amount of $970.50 for money owed for the transcript of these proceedings that has yet to be paid. A copy of her transcript invoice will be attached to these reasons and judgment.

The City filed the instant suspensive appeal from the judgment of the trial court, contending the trial court erred in:

1. (1) determining that the City did not comply with the 2004 Consent Judgment;

2. (2) rendering judgment beyond the scope of the 2004 Consent Judgment;

3. (3) issuing a judgment contrary to the Louisiana Constitution and Civil Code articles 655 and 656; and

4. (4) making cumulative evidentiary rulings that deprived the City of a fair trial.

Following the lodging of this appeal, this court issued an interim order[5] remanding this matter to the trial court for the limited purpose of amending the April 9, 2021 judgment to correct certain decretal deficiencies. An amended judgment was signed by the trial court on March 11, 2022, and was supplemented into the record on appeal.

## DISCUSSION

Because resolution of assignments of error two and four may affect the applicable standard of review herein, we address them first on appeal.

---

[5]Specifically, the April 9, 2021 judgment of the trial court failed to identify the name of the party in whose favor the relief was awarded and the name of the party against whom the relief was awarded as required by LSA-C.C.P. art. 1918(A).

6

## Assignment of Error Number Two

In its second assignment of error, the City contends that the trial court committed legal error in rendering a judgment exceeding the scope of the 2004 Consent Judgment and the matters before the court, which it contends warrants *de novo* review herein by this court.

A court of appeal may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. Evans v. Lungrin, 97-0541 (La. 2/6/98), 708 So. 2d 731, 735; Rosell v. ESCO, 549 So. 2d 840, 844 (La. 1989). However, where one or more legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent *de novo* review of the record. Evans, 708 So. 2d at 735. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. Kinnett v. Kinnett, 2020-01134 (La. 12/10/21), ___ So. 3d ___, ___, 2021 WL 5860935, *4.

The City contends that the trial court improperly exceeded the scope of the hearing and expanded the scope of the 2004 Consent Judgment beyond its clear and explicit agreed-to terms by ordering remedies beyond what the parties agreed to many years ago. The City avers that the only remedies available to plaintiffs under the Consent Judgment were specific performance or damages. The City argues that the trial court "unilaterally expanded the question of whether the City complied with the express terms of the 2004 Consent Judgment," and contends that in doing so, the trial court committed legal errors, which the City argues are reviewable by the court *de novo*. We find no merit to these arguments.

Despite the City's assertions to the contrary, the record reflects that in addition to plaintiffs' claims against the City alleging a breach of the Consent

7

Agreement, the trial of this matter properly encompassed plaintiffs' claims for removal and reinstallation of the existing culverts on Lafayette Street at the correct inverts; for a preliminary injunction directing the City to reroute the drainage from plaintiffs' property and restore the property to its natural condition; for a permanent and mandatory injunction compelling performance of these acts by the City; for continuing enforcement of the Consent Judgment; for interference with a natural servitude; for negligence; for inverse condemnation; and for damages, costs, and attorney's fees. Through plaintiffs' supplemental and amended pleadings, these claims were placed squarely before the trial court for adjudication at trial. The trial court stated as much in its written reasons for judgment, noting:

> Because of continued flooding, and accumulation of trash on the property, and the City not responding to the issue, as well as denying permits to fill parts of the property, landowners amended their pleadings, asking this Court in the pleadings to order that the Consent Judgment entered into on August 10, 2004 be enforced so as to achieve its letter and spirit, and that a mandatory injunction be issued directing the City to reroute the drainage from Landowners' property.

On review, we find no indication in the record before us that the claims asserted in plaintiffs' supplemental and amending petitions (and considered by the trial court) were dismissed or otherwise disposed of prior to trial. We further note that pursuant to the Consent Judgment, the parties specifically reserved their rights to further contest matters in this litigation, stating that "[t]he parties agree that this Consent Judgment is limited to these matters only and that all parties reserve their rights, without prejudice, to the matters in this litigation." As such, we reject as meritless the City's contention that the trial court had one "single issue before it," i.e., whether the City breached the Consent Judgment.

To the extent that the City contends specific performance or damages are the only remedies available to plaintiffs herein, we acknowledge that upon an obligor's failure to perform an obligation to do an act, the granting of specific performance is at the discretion of the court and that under Louisiana's civil law system, specific

8

performance is the preferred remedy for breach of contract. <u>See</u> LSA-C.C. art. 1986; <u>Bourgeois v. Dunn</u>, 2001-1185 (La. App. 1st Cir. 6/21/02), 822 So. 2d 708, 711. Thus, an obligee enjoys the right to demand, insofar as is practicable, the specific performance of the obligation. <u>See</u> LSA-C.C. art. 1758. An obligee has a right to specific performance for breach of contract except when it is impossible, greatly disproportionate in cost to the actual damage caused, no longer in the creditor's interest, or will result in a substantial negative effect upon the interests of third parties. <u>Robichaux v. Lanoux</u>, 2009-2181 (La. App. 1st Cir. 6/11/10) (unpublished), 2010 WL 2342763, *3. Moreover, the remedy of specific performance may, under some circumstances, be enforced by injunction. The petitioner must have a substantive right to specifically enforce an obligation in order for an injunction to be used as a procedural remedy to enforce the obligation. <u>Charter School of Pine Grove, Inc. v. St. Helena Parish School Board</u>, 2007-2238 (La. App. 1st Cir. 2/19/09), 9 So. 3d 209, 222.

Although specific performance is the preferred remedy for breach of a contract, when a defendant obstructs the plaintiff in the enjoyment of a real right, the plaintiff nonetheless may be entitled to a prohibitory injunction restraining the disturbance and also to a mandatory injunction for the removal of the obstruction or to undo what has been illegally done. <u>Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa</u>, 2004-0270 (La. App. 1st Cir. 3/24/05), 906 So. 2d 660, 664.

A mandatory injunction is one that commands the doing of some action and has the same basic effect as a permanent injunction. The party seeking a mandatory injunction must show by a preponderance of the evidence at an evidentiary hearing that he is entitled to the preliminary injunction. <u>Concerned Citizens for Proper Planning, LLC</u>, 906 So. 2d at 664. Likewise, a permanent injunction may be issued only after a trial on the merits at which the burden of proof is a preponderance of the evidence. <u>City of Baton Rouge/Parish of East Baton Rouge v. 200 Government</u>

Street, LLC, 2008-0510 (La. App. 1st Cir. 9/23/08), 995 So. 2d 32, 36, writ denied, 2008-2554 (La. 1/9/09), 998 So. 2d 726.

With regard to a preliminary injunction, whether to grant or deny a preliminary injunction is a matter that lies within the sound discretion of the trial court. Thus, absent a clear abuse of this discretion, the trial court's ruling will not be disturbed on appeal. Concerned Citizens for Proper Planning, LLC, 906 So. 2d at 663. The issuance of a permanent injunction is reviewable under the manifest error standard. City of Baton Rouge/Parish of East Baton Rouge, 995 So. 2d at 36.

Here, the plaintiffs specifically sought injunctive relief directing the City to reroute the drainage from plaintiffs' property and restore their property to its natural condition. After having determined that the City breached the Consent Judgment, the trial court ordered the City to remedy its breach by fashioning a remedy "to reroute the drainage from plaintiffs' property and restore the property to its natural condition" as requested by plaintiffs. We disagree with the City's contention that this relief was beyond the scope of the matters placed before the court. Thus, we find no legal error by the trial court that materially affected the outcome or interdicted the fact-finding process herein, such that *de novo* review is required.

Accordingly, the City's second assignment of error lacks merit.

**Assignment of Error Number Four**

In its fourth assignment of error, the City contends that the trial court committed reversible error by making cumulative evidentiary rulings that deprived the City of a fair trial. If a trial court commits an evidentiary error that interdicts its factfinding process, this court must conduct a *de novo* review. Spann v. Gerry Lane Enterprises, Inc., 2016-0793 (La. App. 1st Cir. 8/24/10), 256 So. 3d 1016, 1022, writ denied, 2018-1584 (La. 12/3/18), 257 So. 3d 194, and writ denied, 2018-1649 (La. 12/17/18), 258 So. 3d 599. Thus, any alleged evidentiary errors must be addressed first on appeal, inasmuch as a finding of error may affect the applicable standard of

10

review. Penton v. City of Hammond Police Department, 2007-2352 (La. App. 1st Cir. 5/2/08), 991 So. 2d 91, 95.

As to the City's challenges to the trial court's evidentiary rulings, the trial court is granted broad discretion in making evidentiary rulings. The trial court's determinations will not be disturbed on appeal absent a clear abuse of discretion. See Emery v. Owens-Corporation, 2000-2144 (La. App. 1st Cir. 11/9/01), 813 So. 2d 441, 448, writ denied, 2002-0635 (La. 5/10/02), 815 So. 2d 842. The abuse-of-discretion standard is highly deferential to the trial judge's determination under consideration. Abshire v. State Through Department of Insurance, 2017-0689 (La. App. 1st Cir. 5/16/18) (unpublished) 2018 WL 2250472, *7, n. 6, writ denied sub nom. Abshire v. State, 2018-00979 (La. 10/8/18), 253 So. 3d 790. An abuse of discretion generally results from a conclusion reached capriciously or in an arbitrary manner, which means the absence of a rational basis for the action taken. Mathieu v. New Orleans Public Library, 2009-2746 (La. 10/19/10), 50 So. 3d 1259, 1263. Thus, a trial court's discretionary action will not be disturbed on review if reasonable people could differ as to the propriety of the trial court's action. J. Caldarera & Co., Inc. v. City of Baton Rouge, 2003-0759 (La. App. 1st Cir. 2/23/04), 873 So. 2d 728, 730.

This case was tried before a judge rather than before a jury. A trial judge, unlike a jury, is well versed in the rules of evidence, and, therefore, is trained to give the appropriate weight to evidence and to evaluate evidence without bias. Additionally, because of the training and experience a trial judge has, a trial judge is in a far better position than a jury to disregard, and not consider, evidence that has been improperly admitted at a trial. Raiford v. U.S. Industries/Ames Lawn & Garden Tools, 2005-0815 (La. App. 4th Cir. 5/3/06), 929 So. 2d 288, 291-292, writ denied, 2006-1615 (La. 10/13/06), 939 So. 2d 366.

Additionally, as set forth in LSA-C.E. art. 103(A), in pertinent part, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." The proper inquiry for determining whether a party was prejudiced by a trial court's alleged erroneous ruling on the admission or exclusion of evidence is whether the alleged error, when compared to the entire record, had a substantial effect on the outcome of the case. If the effect on the outcome of the case is not substantial, reversal is not warranted. LSA-C.E. art. 103(A); Chiasson v. Louisiana Medical Mutual Insurance Co., 2019-0617, 2019-0618 (La. App. 1st Cir. 6/18/20), 307 So. 3d 204, 208-09. If the exclusion of evidence taints a trial court's findings, this court then steps into the shoes of the factfinder and conducts a *de novo* review of all of the admissible evidence to ensure a fair trial and a fair judgment. Nonetheless, a *de novo* review should not be undertaken for every evidentiary exclusion error. Rather, a *de novo* review should be limited to consequential errors; namely, where the error prejudiced or tainted the trial court's finding with regard to a material factual issue. Walley v. Vargas, 2012-0022 (La. App. 1st Cir. 9/21/12), 104 So. 3d 93, 101, citing Evans, 708 So. 2d at 735.

Cumulatively, "errors in evidentiary rulings, coupled with other improper circumstances occurring at trial, may be so prejudicial as to deprive the parties of a fair trial, and thus may constitute reversible error, even if none of the errors considered alone would be sufficient to rise to the level of reversible error." Lovecchio v. Romain, 2019-0779 (La. App. 4th Cir. 3/25/20), ___ So. 3d. ___, ___, 2020 WL 1465943, *4, writ denied, 2020-00458 (La. 9/8/20), 301 So. 3d 30.

On appeal, the City contends that the trial court made cumulative errors in its evidentiary rulings that were so prejudicial that the errors deprived the parties of a fair trial. The City contends that the trial court allowed "too much evidence" into the record, which became the court's primary basis for its judgment in this case.

12

The City maintains that the trial court erred in allowing plaintiff, Hilda Landry Drennan, to testify regarding the run off and trash that accumulates on her property any time it rains, and in allowing her to answer opinion questions regarding the contents and purpose of the Consent Judgment. However, our review of the record indicates that Ms. Drennan testified to matters within her knowledge. For example, when asked if the City installed the 48-inch pipe in accordance with the Consent Judgment, Ms. Drennan candidly responded that she did not know.

The City also contends that the trial court erred by allowing Wallace C. Drennan III, Ms. Drennan's husband, to give opinion testimony with regard to the flow of water in the pipe. Finally, the City asserts that "one of the most prejudicial evidentiary rulings" was that the trial court allowed Dr. Martin to give opinion testimony regarding "outside-of-the-consent-judgment 'fixes'" and to testify regarding cost estimates for these "fixes."

In response to these arguments, plaintiffs point out that the trial court has broad discretion in its evidentiary rulings and maintain that all of the evidence relating to the Consent Judgment and condition of the property was "probative and necessary" to show the manner in which the Consent Judgment was breached, the need for a remedy, and the nature and scope of that remedy. Plaintiffs further contend that any potential error stemming from Ms. Drennan's testimony regarding the placement of the 48-inch pipe was harmless, considering the other evidence in the record establishing that the pipe was not installed correctly.

With respect to Mr. Drennan's testimony, plaintiffs contend that the trial court properly acted within its discretion pursuant to LSA-C.E. art. 701 in allowing Mr. Drennan to testify as to his personal knowledge regarding the water flow and pipes installed on the property, given that he is the president of an underground utility business that bids on public works and infrastructure projects. We agree. Moreover, to the extent that the City points to the trial court's written reasons for judgment to

13

show that the trial court heavily relied on Mr. Drennan's testimony regarding the size and installation of the pipes, we note that a trial court's reasons for judgment do not form any part of the judgment, and that appellate courts review judgments, not the reasons for judgment. Wooley v. Lucksinger, 2009-0571 (La. 4/1/11), 61 So. 3d 507, 572. Our review of the record shows that Mr. Drennan's testimony regarding the installation of the pipe and flow of water within the pipe was cumulative, and, even if admitted in error, was harmless, as the plaintiffs' expert, Dr. Martin, testified to the same issues with the installation and function of the pipe.

In this case, regardless of whether any of the trial court's rulings admitting evidence were erroneous, based on our thorough review of the record herein, we cannot say that the City established that any of the alleged errors were prejudicial or otherwise had a substantial effect on the trial court's judgment as to interdict the judgment or warrant *de novo* review. As previously discussed, the trial court has vast discretion in making evidentiary rulings, and we can only overturn those that lack a rational basis for the action taken. See Emery v. Owens-Corporation, 813 So. 2d at 448.

Accordingly, we likewise find no merit to the City's fourth assignment of error.

### Assignment of Error Number One

In its first assignment of error, the City contends that the trial court erred in finding that the City breached the 2004 Consent Judgment.

A consent judgment is a bilateral contract between the parties by which the parties adjust their differences by mutual consent, with each party balancing his hope of gain against his fear of loss. Its binding force arises from the voluntary acquiescence of the parties, rather than the adjudication by the court. LSA-C.C. art.

14

3071;[6] Mayo v. Hutchison, 2016-1642 (La. App. 1st Cir. 9/27/17), 232 So. 3d 567, 573-574; see also Preston Oil Co. v. Transcontinental Gas Pipe Line Corp., 594 So. 2d 908, 913 (La. App. 1st Cir. 1991). Further, interpretation of a consent judgment, i.e., a contract between parties, is a determination of the common intent of the parties, and when the words of the contract are clear and explicit and lead to no absurd consequences, the intent of the parties is to be determined by the words of the contract. LSA-C.C. art. 2045; Carr & Associates, Inc. v. Jones, 2019-0550 (La. App. 1st Cir. 12/27/19), 292 So. 3d 577, 584.

On appeal, the City points out that "the parties unequivocally agreed" to the terms of the Consent Judgment, but contends that the trial court manifestly erred and made a finding, which it characterizes as "contrary to reality," when the trial court found that the City did not properly install the pipes as ordered by the Consent Judgment.

In response, the plaintiffs maintain that "the trial court relied upon Civil Code articles… and uncontradicted record evidence in holding that the City breached both the explicit terms and the spirit of the Consent Judgment." In support, the plaintiffs point to the trial court's specific finding that while a 48-inch pipe was installed for a portion of the project, it was not installed in accordance with the DOTD's timetable, plans, and specifications.

At trial, Dr. Martin, an expert in civil engineering with a specialty in hydraulics, testified that he performed "multiple model studies" and that it was fairly evident that the 48-inch pipe did not slope in accordance with the DOTD plans. Dr. Martin testified that even though the 48-inch pipe was a gravity pipe, which is generally designed to flow from high elevation to low, this pipe flowed "contra to

---

[6]Louisiana Civil Code article 3071 provides that:

A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.

gravity" or uphill in at least three locations, which clearly was contrary to DOTD's plans. Dr. Martin also testified that although the Consent Judgment called for a 48-inch pipe at the Galvez outfall, and the City could have installed that 48-inch pipe all the way to the outfall as provided by the terms of the Consent Judgment, the City failed to do so, and instead installed a 36-inch pipe.

As the record demonstrates, the City's own expert in civil engineering with a specialty in hydraulics or drainage flow, André Charles Monnet, testified that Mr. Drennan and Dr. Martin, who was plaintiffs' expert, were correct in their observation that the City installed two 36-inch pipes on Carondelet Street, which were not contained within the DOTD's plans. Mr. Monnet further agreed that the 36-inch pipes under Carondelet Street were not part of the Consent Judgment, and, moreover, that the Consent Judgment did not call for constructing two 36-inch pipes to replace the 48-inch pipe that the parties agreed to in the Consent Judgment.

Accordingly, based on this uncontradicted testimony at trial and the entirety of the record before us, we find ample support for the trial court's factual finding and conclusion that the City breached the Consent Judgment. Considering the four corners of the Consent Judgment alone, the City agreed, among other things, to install a 48-inch pipe from the western side of Carondelet Street to the Galvez Street outfall according to DOTD timetable, plans, and specifications. As the trial court recognized in reaching its decision, this did not occur.

Thus, we also find no merit to this assignment of error.

**Assignment of Error Number Three**

In its remaining assignment of error, the City contends that the trial court committed legal error by issuing a judgment contrary to the Louisiana Constitution and Louisiana Civil Code articles 655 and 656.

Specifically, the City contends that the judgment of the trial court violates Article VII, Section 14(A) of the Louisiana Constitution, which prohibits funds of

16

the state or political subdivision being "loaned, pledged, or donated to or for any person, association, or corporation, public or private." In support, the City cites an Attorney General Opinion that prohibits "gratuitous alienation of public funds" for private purposes.

On review, we find the City's reliance on such to be misplaced. The relief ordered by the judgment of the trial court herein was not gratuitous or a gift, but instead resulted from the trial court's enforcement of the Consent Judgment entered into by the City and plaintiffs in response to pending litigation between the parties.

As set forth above, a consent judgment is a bilateral contract wherein the parties adjust their differences by mutual consent and thereby put an end to a lawsuit with each party balancing the hope of gain against the fear of loss. LSA-C.C. art. 3071; Mayo, 232 So. 3d at 573-574; Preston Oil Co., 594 So. 2d at 913. Its binding force arises from the voluntary acquiescence of the parties, rather than the adjudication by the court. Mayo, 232 So. 3d at 574. As such, a judgment, whether resulting from the assent of the parties or as a result of a judicial determination after a trial on the merits, is and should be accorded sanctity under the law. Plaquemines Parish Government v. Getty Oil Co., 95-2452 (La. 5/21/96), 673 So. 2d 1002, 1006.

By negotiating and entering into such an agreement, the City created or assumed various obligations and agreed to perform certain measures to improve or alleviate the drainage problems on the plaintiffs' property. Thus, we do not find the portion of the judgment of the trial court ordering the City to perform certain measures to be gratuitous or a gift to plaintiffs, but instead, constitutes a resolution and enforcement of the City's contractual obligations created by the Consent Judgment herein.

Moreover, we find that by entering into the Consent Judgment, the City has waived these constitutional defenses. The Consent Judgment effectuated a compromise of the parties' differences. As such, the City cannot now raise

17

constitutional defenses in response to plaintiffs' efforts to enforce the Consent Judgment which the City voluntarily entered into with plaintiffs. See City of Kenner v. Jumonville, 97-125 (La. App. 5th Cir. 8/27/97), 701 So. 2d 223, 229, writ denied, 97-2890 (La. 1/30/98), 709 So. 2d 718, cert. denied, Jumonville v. City of Kenner, 524 U.S. 953, 118 S. Ct. 2371, 141 L. Ed. 2d 739 (1998). Thus, these arguments also lack merit.

Lastly, the City argues that the trial court's judgment violates LSA-C.C. arts. 655 and 656.

Louisiana Civil Code article 655, addresses "Natural drainage," and provides that:

> An estate situated below is the servient estate and is bound to receive the surface waters that flow naturally from a dominant estate situated above unless an act of man has created the flow.

Further, LSA-C.C. art. 656, "Obligations of the owners," provides that:

> The owner of the servient estate situated below may not do anything to prevent the flow of the water. The owner of the dominant estate situated above may not do anything to render the servitude more burdensome.

The City contends that the trial court "completely ignored Louisiana's natural drainage laws" when ordering the City to "dig out some of the cross section on the ravine on plaintiffs' property, place backfill, put the pipes in the ground, backfill and seed over it, then fill the property to cover it in order to alleviate the drainage problems that have worsened over the years on the property." Without relying on any evidence, the City avers that if the drainage is repaired as ordered, the landowners above and below the subject property would have significant legal actions to enforce the predial servitude of the natural drain.

The trial court indicated in its written reasons that in ordering this solution, the court accepted the recommendation of plaintiffs' expert, Dr. Martin, as follows:

> Dr. Martin offered another solution based on the City allowing the installation of piping and filling of a pond on a neighboring property in

18

order to redirect storm water off or away from that property, thereby impeding the natural flow of drainage away from plaintiff's property. In this solution, Dr. Martin explains that it would be an easy pipe job. He explained you would have to come in, dig out some of the cross section on the ravine, place backfill, put the pipes in the ground, backfill them and seed over it, then fill the property to cover it. He explained that this would be the least expensive and least intrusive fix to the drainage problem at the heart of the Consent Judgment. This court finds the second solution, which is the least expensive, is the correct route to relieve the drainage problem on the plaintiffs' property and to fulfill the spirit of the Consent Judgment entered into between the parties.

As noted above, the effect and weight to be given expert testimony is within the broad discretion of the trial court. Louisiana State Bar Association v. Carr & Associates, Inc., 2008-2114 (La. App. 1st Cir. 5/8/09), 15 So. 3d 158, 171, writ denied, 2009-1627 (La. 10/30/09), 21 So. 3d 292. The decision reached by the trial court regarding expert testimony will not be disturbed on appeal absent a finding that the trial court abused its discretion. Morgan v. State Farm Fire and Casualty Company, Inc., 2007-0334 (La. App. 1st Cir. 11/2/07), 978 So. 2d 941, 946.

Where, as here, the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, 549 So. 2d at 844.

To the extent that the City now argues on appeal that the trial court's judgment fails to take into account Louisiana's natural drainage laws, even if we were to find any evidence of same was presented at trial, we are unable to find error by the trial court in the relief ordered particularly considering Dr. Martin's expert testimony, which the trial court obviously considered and accepted in weighing the evidence before the court.

Having thoroughly reviewed the evidence and testimony of record herein, including the experts' testimony, we find no abuse of the trial court's discretion in

accepting the expert testimony of Dr. Martin, who had specialized knowledge that assisted the trial court with the factual determinations in this case. See <u>Louisiana State Bar Association</u>, 15 So. 3d at 171.

Accordingly, we also find no merit to this assignment of error.

## CONCLUSION

For the above and foregoing reasons, the March 11, 2022 amended judgment of the trial court is hereby affirmed. Costs of this appeal in the amount of $4,840.02 are assessed to the defendant/appellant, the City of Mandeville.

**AFFIRMED.**